ELIZABETH M. McCOY & others *vs.* INHABITANTS OF NATICK.

Middlesex.    January 13, 1916. — March 4, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & PIERCE, JJ.

*Trust,* Construction, Administration.

A testator by his will gave the rest and residue of his estate to his sister for life with a power of disposal during her lifetime and directed that, after her death, "the balance" undisposed of by her should be held by the town of his residence in trust to use the income for the preservation of a monument at his grave and for the care and beautifying of his lot in the cemetery, with a direction that the town should not expend more than four per cent a year for such purposes. The testator owned no lot in a cemetery at the time of his death but was buried in a lot owned by his sister, for the perpetual care of which she had paid to the proprietor of the cemetery the sum of $55. The amount usually left in trust for

the perpetual care of a lot in that cemetery was $100. At the death of the sister, "the balance" undisposed of included several parcels of land. At a time when there had accumulated in money in the possession of the town under the trust the sum of $677, the heirs at law of the testator and those claiming under the will of the sister brought a bill in equity seeking to have the lands in the possession of the town as trustee conveyed to them on the ground that the other funds held by the trustee were ample for the performance of the trust. *Held*, that the trustee in the performance of the trust was not controlled by the standard adopted in the care of the lots in the same cemetery, and therefore that the bill must be dismissed.

*It was intimated* that, if the average net income in a series of years should exceed four per cent upon the principal, a question fairly might be raised as to the disposition of the surplus.

*And also* that a like question fairly might be raised if it should prove impossible reasonably to expend the income in the manner provided by the trust without waste.

BILL IN EQUITY, filed in the Superior Court on December 7, 1914, and afterwards amended, by the heirs at law of Collins Morse, late of Natick, and those claiming under the will of Louisa M. Rockwood, who was given by the will of Collins Morse the estate described in the opinion, against the town of Natick, alleging that, by the operation of the clause in the will of Collins Morse described in the opinion, there had come into the possession of the defendant in trust, besides over $600 in money, certain lands and buildings which were unnecessary for the purposes of the trust, and praying that such lands and buildings be conveyed to the plaintiffs.

The facts were agreed upon by the parties, and included among others the following:

Collins Morse never owned a lot in any cemetery. He was buried in a lot, which was owned by Louisa M. Rockwood, in Dell Park Cemetery in Natick. That cemetery was owned by Dell Park Cemetery Association, a corporation. Upon the lot was a stone monument, four stone markers and four corner stones. The amount usually left in trust for the perpetual care of a lot in Dell Park Cemetery was $100.

There was in the possession of the defendant, as trustee under the paragraph of the will of Collins Morse quoted in the opinion, and kept by it on deposit in a savings bank, $677.90. The cemetery association also had received from Louisa M. Rockwood $55 for the perpetual care of her lot. "The income from such funds will be ample for the care of this lot in a suitable manner in conform-

ity to the rest of the cemetery and also for the care and replacement of the stones and monument on said lot whenever needed."

Under the quoted paragraph of the will the defendant also received and held four different parcels of land and one half interest in two others.

The case was reported by *Morton, J.,* to this court for determination upon the pleadings and the agreed facts.

*W. R. Bigelow,* for the plaintiffs.

*F. B. Burns,* (*C. J. F. O'Brien* with him,) for the defendant.

PIERCE, J.    Collins Morse by his last will devised and bequeathed to his sister, Louisa M. Rockwood, after certain bequests, the rest and residue of his estate with power to "sell and dispose of so much . . . as will ensure her a comfortable living." At her decease, he gave "the balance" undisposed of to the town of Natick "but in trust nevertheless the income of which is to be used for the preservation of the monument which my executor is hereby authorized to erect at my grave and for the care and beautifying of my lot in the cemetery. . . . The town shall not expend a greater sum than four per cent per annum, deeming that as large an amount as the town ought to pay."    The validity and construction of the bequest to the town of Natick was considered by this court in *Morse* v. *Natick,* 176 Mass. 510.    It was there held, that the gift to the town created under our statutes a good perpetual trust.

In reference to the provision in the will as to the sum to be expended, Morton, J., said: "The direction that not more than four per cent per annum shall be expended by the town refers, we think, to income to an amount not exceeding four per cent on the principal.    The gift is, in the first instance, of the whole income, to be used for the purposes named, and it is hardly to be supposed, we think, that the testator could have intended, by the direction referred to, to limit the expenditure to the trifling amount of four per cent of it.    There is nothing to show that the income has been or is, or probably will be, more than that, or that there has been or will be any accumulation.    Indeed, it may be fairly assumed that it is not probable that the town will realize more than four per cent from the trust fund."

So far as the record shows, events have justified the prediction that the percentage of income received would not exceed four per

cent of the principal. To be sure, there appears to be in possession of the town of Natick on deposit in the Natick Savings Bank the sum of $677.90, and interest thereon from November 1, 1914, at four and one half per cent. Assuming that this sum represents unexpended income, no facts are reported from which it can be determined when, or how, or from what source it was amassed, nor whether, during the time of its collection, the direction of the trust as to the amount to be expended by the. trustee has been fully obeyed.

The will furnishes in explicit terms a guiding and authoritative instruction to the trustee. It contains neither statement nor inference that the measure of the trustee's duty is adoption of or conformity to such a standard of taste and sentiment as shall from time to time be presented to view in the care, maintenance and beautification of other burial lots in this particular cemetery.

Should the average net income in a series of years exceed four per cent upon the principal, or should it prove impossible reasonably to expend the income in the manner provided by the trust without waste, a question might fairly be raised as to the disposition of any surplus, within principles recognized in *Sears* v. *Hardy*, 120 Mass. 524, *Teele* v. *Bishop of Derry*, 168 Mass. 341.

No such question is now before us and a decree should be entered dismissing the bill with costs.

*Decree accordingly.*