ALLAN FORBES, trustee in bankruptcy *vs.* FREDERIC E. SNOW & another, trustees, & others.

Suffolk.   November 24, 1922. — May 23, 1923.

Present: RUGG, C.J., BRALEY, DECOURCY, CROSBY, PIERCE, CARROLL, & JENNEY, JJ.

*Jurisdiction. Compromise of Controversy concerning Will. Trust,* Construction of instrument creating trust. *Bankruptcy.*

The courts of the Commonwealth have jurisdiction in equity of a suit by a trustee in bankruptcy to obtain possession for the benefit of the creditors of the bankrupt of the bankrupt's interest in the estate of his father and under a trust established by a decree to effectuate a compromise of a controversy relating to the father's will, entered under G. L. c. 204, §§ 15–18, before the bankrupt became insolvent.

By a decree entered in 1896 under Pub. Sts. c. 142, § 14, in compromise of a controversy concerning a will, a trust was created from the residue of the

estate whose net income should be divided among the testator's children and, upon the death of any of such children, the trustees were directed to " pay and deliver a share of the principal . . . not needed for carrying out any provisions of the trust remaining unfulfilled . . . to the executor or executors of such deceased child to be disposed of as provided in his or her will, or, if such child shall die intestate, to his or her legal representatives to pass or be distributed under the statutes of descent and distribution then in force in this Commonwealth." By a subsequent article there was provided " a payment and delivery to the executor or executors or legal representatives of such deceased child or children of a proportionate part of such portion of said general residue as may no longer be needed to support " certain other trusts, and the agreement stated that in " determining the proportionate part to be paid to the representatives of any deceased child . . . the entire number of parts shall be determined by reckoning the number of living children of the testator and adding thereto the representatives of any child deceased, such representatives of each counting as one." Twenty-two years after the decree approving the compromise, a son of the testator, solvent at the time of the decree, was adjudicated a bankrupt, and his trustee in bankruptcy sought by bill in equity to be given possession of the bankrupt's interest in his father's estate. *Held,* that

(1) There was no attempt by the agreement to create a spendthrift trust;

(2) The bankrupt's share in the income of the trust was subject to assignment by him and passed to his trustee in bankruptcy;

(3) The bankrupt had a vested equitable remainder in the share of the fund to be paid upon his death;

(4) The adjudication in bankruptcy and the appointment of the trustee in bankruptcy extinguished, so far as the son who had become bankrupt was concerned, the power of appointment conferred upon the children of the testator by the compromise agreement;

(5) The right in remainder in the principal of the trust vested in the trustee in bankruptcy to be paid at the death of the bankrupt or earlier, if and when so payable in case of earlier distribution in whole or in part;

(6) The purposes of the trust not having been accomplished, it could not be terminated;

(7) The interest of the bankrupt in the income and principal of the trust under the decree confirming the compromise agreement, thus vested in the trustee in bankruptcy, was to be paid to the trustee or to his assignee as and when it became payable under the agreement;

(8) Such an interest was of such a nature that its value could be ascertained by appraisal and sale.

A suit in equity involving an issue, whether a certain assignment made by a bankrupt before his adjudication was valid as against his trustee in bankruptcy, was referred to a master, who found that the assignment " was executed within four months of the date of the bankruptcy . . . is not now a prior claim against the bankrupt's estate, having been made less than four months prior to the adjudication in bankruptcy." On reservation of the suit for determination by this court, it was *held,* that it could not be assumed that in these circumstances the master overlooked the fundamental principles as to preferences set out in the bankruptcy law and amplified in *Putnam* v. *United States Trust Co.* 223 Mass. 199, and that the claim of the alleged assignee must be dismissed.

BILL IN EQUITY, filed in the Supreme Judicial Court on
December 2, 1920, by the trustee in bankruptcy of Ben-
jamin P. Cheney against the trustees under the will of the
father of the bankrupt, also named Benjamin P. Cheney;
all beneficiaries and persons interested in the trust under
the will as established by compromise; Henry F. Woodard
and Bates Warren, trustees, Frederic E. Snow and Henry B.
Day, trustees, and Herbert P. Queal, the holders respectively
of three assignments by the bankrupt made more than four
months preceding his bankruptcy; and three creditors who
by legal process had attachments upon the interest of the
bankrupt under the will as compromised which were more
than four months old at the time of the adjudication.

The suit was referred to a master. Before the filing of
the master's report, all claims under assignments and by
attachments, except that of Herbert P. Queal, were dis-
charged. As to the claim of Queal, the master found as
follows:

" The assignment to Herbert P. Queal, dated November 1,
1917, was given to secure a bond of the same date. It was
executed within four months of the date of the bank-
ruptcy. . . .

" I find that the assignment to the defendant Herbert P.
Queal, above mentioned, is not now a prior claim against
the bankrupt's estate, having been made less than four
months prior to the adjudication in bankruptcy."

Other material facts are described in the opinion.

Objections and exceptions to certain findings by the master
were filed by Elizabeth S. Cheney and Benjamin P. Cheney.
The exceptions were heard by *Crosby*, J., by whose order
an interlocutory decree was entered overruling the exceptions
and confirming the report. The suit then was reserved
upon the pleadings, the master's report and the interlocutory
decree for determination by the full court.

The case was argued at the bar in November, 1922, before
*Rugg*, C.J., *DeCourcy, Carroll, & Jenney*, JJ., and afterwards
was submitted on briefs to all the Justices.

*W. D. Turner & G. F. Wales*, for the plaintiff.

*R. H. Holt*, for the trustees.

*W. H. Hitchcock,* for the defendants Elizabeth S. Cheney and Elizabeth C. Kaufman; and for the assignee of Herbert P. Queal.

*P. M. Hubbard,* guardian *ad litem* for certain minors.

*S. M. Child,* for the defendant Benjamin P. Cheney.

*J. A. Locke & F. L. Maguire,* were permitted to file a brief as *amici curiae.*

RUGG, C.J. Benjamin P. Cheney was adjudged a bankrupt and his trustee was appointed in 1918. His trustee brings this suit in equity to reach and obtain possession, for the benefit of the creditors of the bankrupt, of his interest in the estate of Benjamin P. Cheney, the elder of that name and hereafter called the testator. All persons in interest have been joined as parties. The testator died in 1895, leaving a will which was allowed by the Probate Court, and an appeal was taken from that decree by certain parties in interest to the Supreme Judicial Court. The controversy thus existing was compromised by an agreement approved by the court as required by the statute. A decree was entered in 1896, ratifying and confirming the agreement of compromise, affirming the decree of the Probate Court allowing the will subject to the terms of the agreement, and authorizing the executors and trustees under the will to sign the agreement of compromise and to construe and execute the will and to administer the estate in accordance with said agreement. The residue of the estate was established as a trust fund. Large sums in way of annual payments from the income of this fund were required chiefly for the benefit of the widow of the testator. It is not necessary to narrate these in detail. Subsequent events have caused a division of the residue of the estate into two funds, but that factor and the other provisions of the will and of the agreement have no bearing upon the issues here raised and need not be recited.

It is indubitable that the State courts have jurisdiction to adjudicate the rights of the bankrupt at the instance of his trustee in a case like the present. *Bardes* v. *Hawarden Bank,* 178 U. S. 524, 532, 533. *Kelley* v. *Gill,* 245 U. S. 116. *Galbraith* v. *Vallely,* 256 U. S. 46.

The agreement of compromise was executed long before the bankrupt had fallen into financial distress and when apparently he was quite solvent. Large sums were paid to him from the estate of the testator in his own right, wholly apart from the residuary trust fund here in question. That agreement was made in consequence of the will of the testator. The rights of the bankrupt arose under the will and under the agreement. *Ellis* v. *Hunt,* 228 Mass. 39. The bankrupt, then being solvent and not contemplating bankruptcy nor intending to defraud his creditors, had a right to enter into any agreement with his coheirs and beneficiaries under the will respecting the bounty bestowed upon him by the testator which seemed wise to him. He could create any trust he desired, even to the extent of placing the principal of a trust of which he retained the income beyond the reach of future creditors, but he could not thus avoid future creditors through a spendthrift trust for his own benefit. *Pacific National Bank* v. *Windram,* 133 Mass. 175. *Crawford* v. *Langmaid,* 171 Mass. 309.

The decision of the issues here raised depends upon the interpretation of the ninth and tenth clauses of the agreement. They are of the tenor following: " Ninth. To divide the net income of the residue of the estate remaining after carrying out all the provisions of said will as hereinbefore modified by this agreement equally among the children of the said testator, such division and payment to said children to be made semi-annually during the lives of each. And in the event that any child shall die at a time intermediate between said payments, said trustees shall pay to the legal representative of such child a proportionate part of said income; provided, however, that upon the death of any child of the testator the trustees shall pay and deliver a share of the principal of said residue held by them and not needed for carrying out any provisions of this trust remaining unfulfilled, not including in such unfulfilled provisions the division among the children of the net income of the residue, which share shall be proportioned to the number of said children, including in the enumeration for the purpose of establishing such proportion such child so dying (but

not including any child previously deceased whose share of principal has been previously paid over), to the executor or executors of such deceased child to be disposed of as provided in his or her will, or, if such child shall die intestate, to his or her legal representatives to pass or be distributed under the Statutes of descent and distribution then in force in this Commonwealth: and provided further —

" Tenth.   That in case any child die before the said Mrs. Elizabeth S. Cheney, or before the expiration of any trust charged upon the general residue of the estate of the testator, excepting the trust to divide the net income of the residue among the children of the testator, there shall be from time to time, upon the expiration of the trust for the benefit of Mrs. Cheney, or other trust charged upon said general residue, an additional division of so much of the principal of the general residue held in trust as may no longer be needed to support such trust thus terminated, and a payment and delivery to the executor or executors or legal representatives of such deceased child or children of a proportionate part of such portion of said general residue as may no longer be needed to support such terminated special trust.

" In determining the proportionate part to be paid to the representatives of any deceased child under the provisions of this Tenth Article, the entire number of parts shall be determined by reckoning the number of living children of the testator and adding thereto the representatives of any child deceased, such representatives of each counting as one."

The question to be determined is the nature of the interest of the bankrupt in the residue of the estate under clauses ninth and tenth of the agreement.   Stated broadly and omitting smaller beneficiaries, the main purpose of clause ninth was to establish a large fund as the source of income for the benefit of the widow and children of the testator during their several lives, the principal to be partially distributed from time to time upon the death of each child of the testator until the death of the last survivor, when the trust would terminate, provision always being made for the

maintenance of a fund sufficient to make required payments
to the widow.    Plainly there is no attempt to create a spend-
thrift trust.    It is equally plain that the share of the income
of the residue to which the bankrupt is entitled was subject
to assignment by him.    It passed to his trustee in bank-
ruptcy.    *Woodward* v. *Snow,* 233 Mass. 267.

The distribution of the share in the principal is to be made
equally as between each child of the testator.    In one aspect
each share is subject to a power of appointment by each
child, but in the absence of the exercise of that power it goes
to the legal representatives of such child.    The share is to
be paid [1] " to the executor or executors of such deceased
child to be disposed of as provided in his or her will, or [2]
to his or her legal representatives to pass or be distributed
under the Statutes of descent and distribution then in force."
This form of gift or distribution indicates that the share
goes to the estate of the child to be its assets and not to be
distributed as assets of the testator's estate.    In numerous
places in the will and agreement of compromise the portion
of the residue to be distributed is spoken of as the " share "
of each of the children.    The share of each child in the resi-
due after the termination of the life estate is a vested equit-
able remainder.    Such a remainder vesting in the estate of a
life-tenant after the termination of the life estate is not un-
common.    *Chesman* v. *Cummings,* 142 Mass. 65, 70.    *Cush-
man* v. *Arnold,* 185 Mass. 165, 169.    The words as to the
payment of the several shares are inapt to express the idea
of a gift over to other persons after the life estate.    The
emphasis in one alternative is upon " executor or executors "
and in the other alternative upon " legal representatives "
rather than upon the following modifying words.    The
direction to the executor of a deceased child to pay to the
appointees by will of each child would of course be barren
of effect as against creditors.    *Shattuck* v. *Burrage,* 229
Mass. 448.    In the second alternative the words " to pass or
be distributed " evince a purpose that the share passes as a
part of the estate of the child and not as a part of the estate
of the testator.    All the modifying words show that the
intent is to state in a general way the legal effect of the main

gift to executor or executors or legal representatives of each child, and not to mark a definite subsidiary gift reaching beyond those who would settle the estate. This view finds confirmation in the words of clause tenth, where the direction is for payment " to the executor or executors or legal representatives of such deceased child or children " without more. The general scheme is that the division under clause tenth is to be to the same persons with same quality of estate as under clause ninth. The true interpretation of this clause is that the bankrupt has a vested equitable remainder in the share of the fund to be paid upon his death. This is but amplification of what was said in *Forbes* v. *Snow,* 239 Mass. 138, when the case was here on demurrer.

The power of appointment conferred by clause ninth has become extinguished so far as concerns capacity to appoint for the benefit of others than creditors. The devolution of the remainder in the absence of appointment is to the estate of the bankrupt. He cannot exercise the power, therefore, in a way to derogate from the title of his trustee in bankruptcy. The trustee became vested with all property of the bankrupt " which prior to the filing of the petition he could by any means have transferred." Bankruptcy act of 1898, c. 541, § 70 a (5). 30 U. S. Sts. at Large, 565, as amended. The power to exercise the power of appointment was personal, did not pass to the trustee, and could not be reached by creditors. *Crawford* v. *Langmaid,* 171 Mass. 309, 311. But the bankrupt had such an interest in the remainder after the life estate that he could transfer it by appropriate instrument. The trustee under the bankruptcy law has become possessed of that interest. It has been expressly held in England that the power to appoint cannot be exercised to the harm of the trustee in bankruptcy. *Doe* v. *Britain,* 2 B. & Ald. 93. *Hole* v. *Escott,* 4 Myl. & Cr. 187. *Badham* v. *Mee,* 7 Bing. 695. Such is the necessary result of *Langley* v. *Conlan,* 212 Mass. 135, and the principle there stated. Therefore the right in remainder in the residue has vested in the trustee of the bankrupt, to be paid at the death of the bankrupt or earlier, if and when so payable in case of earlier distribution in whole or in part. This principle also

requires that the right of the trustee vest now rather than that the whole matter be kept open for the benefit of those who may become creditors of the bankrupt subsequent to his adjudication in bankruptcy and before the payment of his share in whole or in part.

The trust cannot be terminated now nor at any time earlier than that fixed by clauses ninth and tenth and other parts of the agreement and will so far as they become pertinent. The trust was valid when established. Its purposes have not been accomplished. There is no impracticability in fact or in law in the further and complete execution of the trust according to its terms. A definite time has been fixed for its termination. It would not be terminated even upon the request of all parties in interest. *Claflin* v. *Claflin,* 149 Mass. 19. *Young* v. *Snow,* 167 Mass. 287. *Sands* v. *Old Colony Trust Co.* 195 Mass. 575. *Conant* v. *St. John,* 233 Mass. 547. *McCoy* v. *Natick,* 237 Mass. 99, 102. Here there is opposition from some of the parties to the trust. The case at bar on this point is quite different from *Sears* v. *Choate,* 146 Mass. 395, and *Langley* v. *Conlan,* 212 Mass. 135.

The bankrupt's vested interest in the income and in the equitable remainder passed to his trustee in bankruptcy. That is to say, all his interest, however described, in the income and in the residue, has passed to the plaintiff. It is to be paid to him or his assignee as and when it becomes payable under the agreement and will. *Clarke* v. *Fay,* 205 Mass. 228, 236.

It is of such nature that its value can be ascertained by appraisal or sale. *Alexander* v. *McPeck,* 189 Mass. 34, 44. The power of appointment by will is not a property right but a personal privilege. It does not pass to the trustee.

There is no exception to the master's report by the defendant Herbert P. Queal, or his assignee. The master found that the assignment to him by the bankrupt was not a prior claim against the bankrupt's estate. This finding must stand because it must be presumed that all subsidiary findings necessary to its soundness were made and because there is no report of the evidence. It cannot be assumed that in these circumstances the master overlooked the fundamental

principles as to preferences set out in the bankruptcy law and amplified in *Putnam* v. *United States Trust Co.* 223 Mass. 199.

Other questions have either become immaterial or have not been argued and need not be discussed.

It has been suggested that the death of the widow of the testator has occurred while the case has been under consideration by the full court. That fact makes no difference with the governing principles. Decree is to be entered in effect that the plaintiff is entitled to the income of the fund due to the bankrupt under the agreement, that he is entitled to the vested equitable remainder of the bankrupt in the residue of the trust fund, and that he or his assignee shall receive it as and when payable under the agreement and will, and that if necessary a special master may be appointed to make sale of those rights of the plaintiff, the details to be settled by a single justice.

*Decree accordingly.*