JOHN E. WHITNEY *vs.* FRANCIS W. WHITNEY, executor.

Middlesex.	February 7, 1944. — November 16, 1944.

Present: FIELD, C.J., LUMMUS, DOLAN, & RONAN, JJ.

*Contract*, Validity, Consideration. *Deed*, Consideration. *Trust*, Termination, Conveyance of real estate, Trustee's duty of fidelity. *Executor and Administrator*, Real estate of decedent, Duty of fidelity.

A transaction whereby real estate, devised under a will in trust for the maintenance and benefit of the testator's daughter for life and to others at her death, was conveyed by a deed joined in by those who were both executors and trustees under the will and by the life beneficiary and all the beneficiaries in remainder, would result in a termination of the trust contrary to the testator's intent and was a perversion of the trust where it appeared that its purposes still were unaccomplished and were not incapable of accomplishment and that the sole consideration for the conveyance was a mortgage by the grantee running only to the beneficiaries in remainder.

This court of its own motion took notice of the illegal conduct of one who, as executor and trustee under a will which gave a power of sale of real estate to him as executor but not as trustee, before the termination of the trust made a conveyance of trust real estate solely in consideration of an obligation of the grantee running, not to the estate, but to the grantor and others as individuals; and ordered judgment for the defendant in an action by such grantor individually to enforce such obligation to the extent of his share therein.

CONTRACT. Writ in the First District Court of Eastern Middlesex dated November 4, 1941.

The case was heard by *Daly*, J.

*P. A. Chapman*, for the defendant.

*W. H. McLaughlin*, (*G. A. McLaughlin* with him,) for the plaintiff.

DOLAN, J. This action of contract is brought to recover $1,000 under an alleged contract described below. A judge

of the District Court found for the plaintiff. Upon report to the Appellate Division an order was entered dismissing the report, and the defendant appealed.

The following facts are disclosed by the evidence: The defendant's testator was the father of John E. Whitney, Edward C. Whitney, Francis W. Whitney and Estelle M. Whitney. He survived his wife, who was the mother of these children. By a will dated August 17, 1929, she devised her "land and buildings" located on Fern Street, in Lexington, to her sons John (the plaintiff here) and Edward, in trust, for the use and benefit of her daughter Estelle for and during the term of her natural life, with directions to apply the income therefrom to her maintenance, and upon the death of Estelle to her sons John, Edward and Francis in equal shares. The testatrix devised the residue of her estate to Estelle, who has been a cripple since childhood. There was evidence that the defendant's testator wanted to buy the Fern Street property, that the plaintiff and his brothers agreed to sell it to him for $3,000, and that a mortgage would be executed to pay that sum. The evidence discloses that by quitclaim deed dated October 24, 1938, Estelle and her three brothers, two of them as executors and trustees as well as individually, conveyed all their right, title and interest in the premises to their father, the defendant's testator; that on October 25, 1938, he executed a mortgage of the premises for $3,000 in statutory form to his three sons individually; that in the deed to their father John and Edward were described as executors and trustees of their mother's will, Estelle as cestui que trust under the will, and John, Edward and Francis as devisees under the will. All signed the deed, the executors and trustees in those capacities and individually. The will conferred a power of sale of the real estate of the testatrix upon the executors of her will. The plaintiff testified in direct examination that at a conference prior to the execution of the deed and mortgage Mr. Chapman, the attorney, told him that he "would collect $1,000" and that three or four months "after the death of the defendant's testator he made a demand for the $1,000" as his one-third interest.

On cross-examination he testified that "the father's business was poor and that the meeting [prior to the execution of the instruments in question] was for the purpose of salvaging his business and caring for Estelle who has been a cripple since childhood." Mr. Chapman, the attorney for the defendant, who represented the parties when the instruments were executed and who had prepared them, testified in substance as follows: The purpose of the preliminary meeting of the parties was to cut down the expense of the defendant's testator who was caring for Estelle, a cripple, in a large home and maintaining a separate home for himself; that his business did not warrant such expense; that it was agreed by all that he "dispose of the two homes maintained by him and . . . move to the home in Lexington [that devised in trust] and . . . care for his daughter . . . at that home"; that he wanted title in his own name to which all agreed; that his business at that time was "bad and he had been disposing of his assets at less than their value to secure cash"; that the sons feared that he might also sell the property in which Estelle had "surrendered a life estate"; that at the suggestion of the attorney "a second mortgage [there was a first mortgage on the property for $2,500 which had been given to a trust company] was drawn with an arbitrary figure set high enough so that a buyer could not be secured"; that accordingly the mortgage back was executed "without any note or other personal obligation on the part" of the defendant's testator; that "at no time was there any talk of sale or price or agreement for payment by the sons or father"; that he (the attorney) never told the plaintiff he could get $1,000; and that the purpose "of the stamp on the mortgage was so that it would not be presumed a mortgage of convenience in case creditors of . . . [the defendant's testator] attached the property." This testimony of the attorney was corroborated by the sons Edward and Francis, the "other parties to the conference." The plaintiff himself testified that it was he who suggested that the mortgage be put on the property so that his father could not sell the property.

The mortgage back was for $3,000, and it was provided

therein that it was not to bear interest during the life of the mortgagor, and that it was to run for the term of his natural life and was not to become payable until his death, but that if he should sell, assign or transfer the mortgaged property, the mortgage was to "become due and payable immediately upon the date of such sale, transfer or assignment."

The defendant filed certain requests for rulings, among them the following: "1. The evidence is insufficient to warrant a finding for the plaintiff"; and "7. The evidence is sufficient to warrant a finding for the defendant." These requests were denied by the judge who made the following findings of fact: "I find as a fact that prior to October 25, 1938, the plaintiff was the owner of a one-third undivided interest in certain real estate situated in Lexington, that on or about said date he agreed to convey said interest in said property to his father, the defendant's testator, for the sum of one thousand dollars ($1,000) which was to become due and payable if the defendant's testator should attempt to sell, assign or transfer said property or upon the death of the defendant's testator. I find as a further fact that said obligation was not represented by a note but was incorporated in a mortgage instrument executed by the defendant's testator on October 25, 1938, and recorded in Middlesex South Registry of Deeds on November 16, 1938; that upon the death of the defendant's testator, the plaintiff made demand for payment which was refused. I find also that the writ is in proper form and that the plaintiff is entitled to recover $1,000 together with interest."

The first requested ruling of the defendant raised the issue whether the evidence was sufficient to warrant a finding for the plaintiff. That is a question of law, and we are of opinion that the evidence was not sufficient so to warrant. The only consideration for the conveyance of the trust res to the defendant's testator was the covenant contained in the mortgage back to pay $3,000 to the three remaindermen, whose interests thereunder were not vested in possession. The conveyance by the executors and trustees was without any payment or promise of payment to them for the estate represented by them, and was a breach of trust in which

the plaintiff participated as one of the executors and trustees. The fact that all the beneficiaries including the life beneficiary joined in the deed of the trust estate does not aid the executors and trustees. The result of the transaction, if allowed to stand as between the beneficiaries of the trust, would be in effect to terminate the trust. The individual interest of the plaintiff was equitable only, vested in interest but not in possession. The individual interests of his brothers were the same. The interest of Estelle was an equitable interest for life and not in the strict sense that of a life tenant. The present case, therefore, is not one where a life tenant in possession and those having vested remainders, being all of full age and sui juris, could by joining in a conveyance of the estate thus held convey the fee immediately. See *Spring* v. *Hollander,* 261 Mass. 373, 377.

It is settled that where the testator has fixed the time for the termination of the trust, and where it is active and its purposes and objects have not been fully accomplished and its termination would not best accomplish the testator's intent, the trust cannot be terminated even with the approval of all parties in interest. *Claflin* v. *Claflin,* 149 Mass. 19, 22–23. *Young* v. *Snow,* 167 Mass. 287, 288. *Ames* v. *Hall,* 313 Mass. 33, 37. In *Ellis* v. *Hunt,* 228 Mass. 39, 45, the court said that "A trust not incapable of execution and not accomplished cannot be extinguished by mere agreement." See also *McCoy* v. *Natick,* 237 Mass. 99, 102; *Forbes* v. *Snow,* 245 Mass. 85, 93; *Springfield Safe Deposit & Trust Co.* v. *Friele,* 304 Mass. 224, 228; *Damon* v. *Damon,* 312 Mass. 268, 271; *Ames* v. *Hall,* 313 Mass. 33, 37; and cases cited in 123 Am. L. R. 1427–1450. The case of *Partridge* v. *Clary,* 228 Mass. 290, 293, is distinguishable. In that case the court was in fact critical of the action of the trustee who had agreed with the parties to terminate the trust consisting of personal property, saying that he "had no right to end the trust and distribute the fund when he did." But in view of the facts that nineteen years had elapsed from the time that the transaction took place, that the trust had terminated in the meantime, and that there was nothing to show that the beneficiaries had not each received the value

of their interests as of the time when the trust estate was divided between them, the court did not upset the transaction and charge the trustee who had received from the beneficiaries releases under seal. In the present case, as before stated, nothing was paid or promised to be paid to the executors or trustees as such or to the life beneficiary for the conveyance of the trust estate.

The trust in the present case was valid when established. Obviously its purposes have not been accomplished. There is no impracticability in law in the further and complete execution of the trust, and the time fixed for its termination has not arrived. See *Forbes* v. *Snow*, 245 Mass. 85, 93. The transaction in question, that is, the conveyance of the trust estate by the executors and trustees without consideration to the trust estate, with the resultant defeat of the intent of the testatrix who devised it in trust, was one that no court in this jurisdiction would sanction even upon the request of the parties in interest. *Forbes* v. *Snow*, 245 Mass. 85, 93. In the circumstances of the present case, the transaction in question was a perversion of the trust. See *Corkery* v. *Dorsey*, 223 Mass. 97, 103. The legal title to the trust res in question vested in the trustees named in the will of the testatrix, subject, however, to the exercise of the power of sale conferred therein upon them as executors. The conveyance in question by the executors was the sole effective means of passing legal title to the property to the defendant's testator. Thereby the estate of the testatrix furnished the sole consideration for the mortgage back to secure the payment of the purchase price of the equity of the real estate involved. The plaintiff, however, in breach of his trust as one of the executors and trustees of the will whereunder the property in question was devised in trust by the testatrix, instead of requiring the consideration for its conveyance to the defendant's testator to be paid or secured to the estate represented by him, bargained for his own private interest and profit at the expense of the trust estate. He could not do that legally. *Hayes* v. *Hall*, 188 Mass. 510, 511. *Jose* v. *Lyman*, 316 Mass. 271, 278–280, and cases cited. *Boston Safe Deposit & Trust Co.* v.

*Lewis, ante,* 137. We deem it proper to take notice of our own motion of this illegal conduct of the plaintiff. *Coughlin* v. *Royal Indemnity Co.* 244 Mass. 317. *James J. Sullivan, Inc.* v. *Cann's Cabins, Inc.* 309 Mass. 519. "The law frowns upon any act on the part of a fiduciary which places interest in antagonism to duty, or tends to that result." *North Carolina Railroad* v. *Wilson,* 81 N. C. 223, 230. *Hayes* v. *Hall,* 188 Mass. 510, 511. *Wilson* v. *Lineberger,* 94 N. C. 641. *Myers* v. *Hodges,* 2 Watts, 381, 383. Public policy forbids that the contract in the present case entered into by the plaintiff in impairment of his fiduciary obligations be enforced for his personal benefit. *Rice* v. *Wood,* 113 Mass. 133, 135. *Pike* v. *Pike,* 266 Mass. 186, 188. *Yazoo & Mississippi Valley Railroad* v. *Whittington,* 191 Miss. 776. Am. Law Inst. Restatement: Contracts, § 570. 6 Williston, Contracts (Rev. ed.) § 1737. See also 12 Am. Jur. Contracts, § 179, and cases cited.

*Order dismissing report reversed.*
*Judgment for the defendant.*